PORSCHE CARS NORTH AMERICA, INC., a Delaware corporation, and Dr. Ing. h.c.F.Porsche AG, a German corporation, Plaintiffs,

v.

MANNY'S PORSHOP, INC., an Illinois corporation, and Emmanuel Shoshoo, an individual, Defendants.

No. 96 C 5924.

United States District Court,
N.D. Illinois,
Eastern Division.

June 12, 1997.

Oscar L. Alcantara, Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, Ltd., Chicago, IL, Thomas R. Lee, Kimball, Parr, Waddoups, Brown, & Gee, Salt Lake City, UT, Gregory D. Phillips, Johnson & Hatch, Salt Lake City, UT, for Plaintiff.

David Henry McCarthy, III, Law Offices of David H. McCarthy, III, Naperville, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

Porsche Cars North America, Inc. ("Porsche NA") and Dr. Ing. h.c.F. Porsche AG ("Porsche AG") (collectively "plaintiffs") sue Manny's Porshop ("Manny's") and Emmanuel Shoshoo ("Shoshoo") (collectively "defendants") for trademark infringement (Count I), false designation of origin (Count II), and trademark dilution (Count III) under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), 1125(c). Plaintiffs also sue for common law trademark infringement (Count VI), breach of contract (Count VII), and violations of the Illinois Anti-Dilution Act, 765 ILCS 1035/15 (Count IV) and the Illinois Deceptive Trade Practices Act, 815 ILCS 510/2 (Count V). On April 3, 1997, the assigned magistrate judge recommended denial of plaintiffs' motion for a preliminary injunction against defendants. Plaintiffs now object to the magistrate's proposed findings. Defendants fail to respond to plaintiffs' objections.

### BACKGROUND

The court adopts the magistrate's description of the parties and procedural history of this case. Porsche NA is the United States licensee and distributor for Porsche AG, a German corporation, and has the exclusive authority to import Porsche motor vehicles, parts, and accessories. Porsche NA is also the franchisor of authorized Porsche dealers in the United States. Porsche NA serves the sales and service needs of retail consumers through approximately two hundred independent authorized Porsche dealerships.

Porsche NA is the owner of a number of trademarks and service marks. Porsche NA and its dealers/franchises and certain sublicensees are the only authorized providers of vehicle maintenance services under the Porsche marks. Plaintiffs have spent millions of dollars in developing the Porsche marks in the United States and elsewhere. As a result of these expenditures, plaintiffs have established goodwill in the Porsche marks. The Porsche marks have become widely known and recognized throughout the world as symbols of high quality automotive products and services.

Manny's, which is owned and operated by Shoshoo, is in the business of repairing and rebuilding Porsche 911 air-cooled race cars manufactured in or before 1989. Shoshoo has been a mechanic since 1965. After working for a Porsche dealership, Shoshoo went into business for himself in 1978. Between 1978 and the incorporation of Manny's on June 15, 1982, Shoshoo operated a sole proprietorship known as Manny's Por–Shop.

At all times, Shoshoo has operated his business out of a tin shack located in an industrial park in South Holland, Illinois. The facility has no windows, one door, and two garage doors. Shoshoo uses car jacks instead of hydraulic lifts. Shoshoo accepts no drive-in business; he sees customers only by appointment. Shoshoo maintains no display space or showroom. He does not sell new or used cars. The only parts Manny's sells are those installed during a repair. Except for one year, there have only been two employees at Manny's, Shoshoo and Colleen Campbell.

In 1987, Manny's ran several advertisements in a Porsche club publication. Subsequently, Porsche NA sent a series of letters demanding that Manny's immediately stop using the name "Porshop" or any confusingly similar imitation of the Porsche marks. Since then, Porsche NA has made follow-up demands and defendants have given indications of their intent to cease use of the name "Porshop." However, since 1987 Manny's has run four congratulatory advertisements

at the request of Manny's customers that display the name "Porshop.".

In 1990, Porsche NA learned that defendants had ceased use of the name "Porshop" and had changed the name to "Manny's Proshop." However, in 1992, Porsche NA learned that defendants had once again resumed use of the name "Manny's Porshop." Porsche NA then sent another series of letters informing defendants that their name infringed plaintiffs' trademark rights.

Subsequently, plaintiffs and defendants entered into a settlement agreement. Pursuant to the agreement, Porsche NA granted defendants eighteen months to cease using the name "Manny's Porshop," and Porsche NA agreed to pay defendants $750 for expenses incurred in changing the name of their business. Manny's did not change its name, and Porsche NA did not pay the money.

On September 16, 1996, plaintiffs filed this suit along with a motion for preliminary injunction. The assigned magistrate judge recommended denial of the motion for a preliminary injunction.

### DISCUSSION

A party seeking a preliminary injunction must demonstrate some likelihood of prevailing on the merits and must show that denial of preliminary relief will result in irreparable harm for which there is no adequate remedy at law. If these two conditions are met, the court must balance the irreparable harm to the movant if the injunction is not issued against the irreparable harm to defendants if it is issued. The balancing involves a "sliding scale" analysis—the more likely the movant will succeed on the merits, the less the balance of irreparable harms need weigh in its favor; the less likely the movant will succeed on the merits, the more the balance of irreparable harms need weigh in its favor. The balancing process also takes into consideration the consequences to the public interest of granting or denying preliminary relief. *See, e.g., Mil–Mar Shoe Co., Inc. v. Shonac Corp.,* 75 F.3d 1153, 1156 (7th Cir.1996); *Roth v. Lutheran General Hospital,* 57 F.3d 1446, 1453 (7th Cir.1995). The court reviews a magistrate's proposed findings as to injunctive relief *de novo.* 28 U.S.C. § 636(b); *see,*

*e.g., Telxon Corp. v. Hoffman,* 720 F.Supp. 657, 658 (N.D.Ill.1989).

### I. SUCCESS ON THE MERITS

■ Plaintiffs must demonstrate their chance of ultimately prevailing is "better than negligible." *Kinney v. Int'l Union of Operating Engineers, Local 150, AFL–CIO,* 994 F.2d 1271, 1278 (7th Cir.1993) (quoting *Illinois Council on Long Term Care v. Bradley,* 957 F.2d 305, 307 (7th Cir.1992)). The magistrate found that plaintiffs did not meet this burden. The court respectfully disagrees and sustains plaintiffs' objections.

### A. LIKELIHOOD OF CONFUSION (COUNTS I, II, V, and VI)

Plaintiffs' state and federal trademark claims in Counts I, II, V, and VI must satisfy two requirements. *AHP Subsidiary Holding Company v. Stuart Hale Company,* 1 F.3d 611, 619 (7th Cir.1993). Namely, plaintiffs must prove by a preponderance of the evidence: (1) they own prior rights in the Porsche marks; and (2) defendants' use of the name "Manny's Porshop" and Porsche's trade dress in their business creates a likelihood of customer confusion, deception or mistake. *Dunn v. Gull,* 990 F.2d 348, 351 (7th Cir.1993).

■ It is undisputed that plaintiffs have rights in the Porsche marks. The question is whether defendants' use of the name "Manny's Porshop" creates a likelihood of customer confusion. Seven factors aid in this inquiry: (1) the degree of similarity between the marks in appearance and suggestion; (2) the similarity of the products for which the name is used; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the complainant's mark; (6) actual confusion; and (7) an intent on the part of the alleged infringer to palm off its products as those of another. *See, e.g., Smith Fiberglass Products, Inc. v. Ameron, Inc.,* 7 F.3d 1327, 1329 (7th Cir.1993).

■ First, the marks here are similar. Indeed, the magistrate noted the marks are "somewhat similar." Shoshoo has admitted the script in Manny's signs and advertise-

ments is similar, if not identical, to Porsche's script. Tr. 162–64. Moreover, defendants use the name "Porsh," which is pronounced identically with "Porsche."

The magistrate noted that Manny's sign is on a shack in the middle of an industrial park and that Manny's advertisements emphasize the name "Manny's." However, whether Manny's advertisements and signs emphasize "Manny's" or "Porshop," defendants' script is clearly similar to Porsche's federally registered trademarked script, and Manny's uses the phonetically identical term "Porsh" in its name. "[C]ourts have repeatedly held ... repair shops to be guilty of trademark infringement or unfair competition where ... such establishments use or imitate the manufacturer's name or mark in their trade names." *Dr. Ing. h.c.F. Porsche AG v. Zim,* 481 F.Supp. 1247, 1250 (N.D.Tex.1979) (citations omitted); *see also, Clinique Laboratories, Inc. v. Dep. Corp.,* 945 F.Supp. 547, 552 (S.D.N.Y.1996) ("marks are considered similar when they are similar in appearance, sound and meaning") (citation omitted). Accordingly, the first factor favors plaintiffs.

■ Plaintiffs and defendants provide similar products. The magistrate concluded the products are not similar because they involve totally different segments of the automotive repair market. The magistrate noted Porsche NA caters to drivers who seek standard Porsche services, but Manny's caters to drivers of pre–1989 Porsche 911 race cars not ordinarily driven on public streets. However, the test for this prong of the analysis is not whether plaintiffs and defendants provide an identical product. When the marks are very similar, it is sufficient that there is a similarity or a viable relationship between the services. *In re Concordia Int'l Forwarding Corp.,* 222 U.S.P.Q. 355, 356, 1983 WL 51828 (T.T.A.B.1983). Here, both plaintiffs and defendants engage in the repair of Porsche automobiles. Manny's performs work on cars that authorized Porsche dealers perform, and authorized Porsche dealers sometimes provide performance enhancements to race cars. Tr. 172–74, 176–78, 181–82, 192–93. Accordingly, plaintiffs and defendants provide similar services.

Next, the magistrate concluded that the area and manner of use is different. In particular, the magistrate found no relationship in use, promotion, distribution or sales between the goods or services of the parties. However, as explained above, Manny's provides some services that Porsche dealers provide. In addition, Manny's provides these services to a national market; Manny's advertisements appear in national magazines, and at least one California customer brings his automobile to Manny's. Tr. 173; Pl.Ex. C.

The magistrate next concluded that customers are likely to exercise care in this particular market and are thus unlikely to confuse Manny's with plaintiffs: Manny's customers are rich and knowledgeable; they are not attracted to Manny's because of its location, advertising, or reference to the term "Porshop." However, at least one court has rejected the idea that Porsche consumers use a particularly high standard of care. *Dr. Ing. h.c.F. Porsche AG,* 481 F.Supp. at 1250. In addition, some courts have rejected the argument that the presence of sophisticated consumers lessens the impact of a misused mark. *See e.g., Bausch & Lomb, Inc. v. Nevitt Sales Corp.,* 810 F.Supp. 466, 475 (W.D.N.Y.1993); *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,* 799 F.2d 867, 875 (2d Cir.1986). Finally, even if sophisticated customers eventually discover that Manny's is not related to plaintiffs, a trademark violation can exist simply from the initial confusion. *Clinique Laboratories,* 945 F.Supp. 547 at 551. Indeed, Manny's receives calls that must be referred to Porsche dealers; this suggests some initial confusion about the nature of Manny's business. Tr. 169–70.

The magistrate concluded that plaintiffs fail to satisfy the sixth factor[1] because plaintiffs have not provided any actual evidence of confusion. However, Shoshoo admits Manny's receives calls for work that must be referred to Porsche dealerships. Tr. 169–170. This evidence provides ample support for plaintiffs' claim that consumers initially mistake Manny's Porshop for an authorized Porsche dealership or repair shop.

---

**1.** The magistrate recognized plaintiffs have a strong mark (the fifth factor).

■ Finally, the magistrate concluded that defendants have not intended to exploit plaintiffs' good will or to mislead the public. The magistrate noted that defendants emphasize "Manny's" over "Porshop" and that some customers believe "Porshop" stands for "performance oriented repairs." First, defendants' claim that "Porshop" stands for "performance oriented repair shop" is strained, at best. Specifically, the assertion that a repair shop specializing in Porsches has coincidentally chosen a name so remarkably close to the name "Porsche" is of dubious credibility. Moreover, the use of another's style or script constitutes presumptive evidence of deliberate copying and an intent to confuse. *Toys R Us, Inc. v. Canarsie Kiddie Shop, Inc.*, 559 F.Supp. 1189, 1199 (E.D.N.Y.1983); *Caesars World, Inc. v. Caesar's Palace*, 490 F.Supp. 818, 824 (D.N.J. 1980). Plaintiffs have provided sufficient evidence to support their claim that defendants intended to benefit from the Porsche marks.

In light of these factors, plaintiffs have shown that defendants' name and script are likely to confuse customers. The magistrate noted that even if there is a likelihood of confusion, plaintiffs fail to show that a substantial number of customers are likely to be confused. *Door Systems, Inc. v. Pro-Line Door Systems Inc.*, 83 F.3d 169, 173 (7th Cir.1996). However, *Door Systems* does not suggest that the number of confused customers is an additional factor to be considered. Rather, *Door Systems* suggests the seven factor test itself is the means for determining whether a substantial number of customers are likely to be confused. Indeed, the seven factors here suggest that a significant number of customers can in fact confuse the affiliation of Manny's Porshop with plaintiffs.

## B. ANTI-DILUTION CLAIMS

■ Plaintiffs' anti-dilution claims (Counts III and IV) are even more persuasive. In order to prove dilution, plaintiffs need not show they are in competition with defendants or that customers are likely to be confused. 15 U.S.C. § 1127. Rather, plaintiffs need only show the mark is famous and defendants' use is likely to cause dilution. *Intermatic, Inc. v. Toeppen*, 947 F.Supp. 1227, 1238 (N.D.Ill.1996).

■ The magistrate concluded that defendants did not dilute plaintiffs' marks because defendants did not advertise the Porshop name and because customers who see defendants' name are sophisticated. First, defendants do advertise the Porshop name. *See* Pl.Ex. C. Moreover, defendants' advertisement of the name "Porshop" is irrelevant; the Act prohibits even innocuous use. *Intermatic*, 947 F.Supp. at 1240. Second, the magistrate's reliance on what sophisticated customers would believe is misplaced. There is no requirement under the Act that plaintiffs show a likelihood of confusion. *Id.* It is sufficient that the name "Porshop" has the likely effect of diluting the name "Porsche" and plaintiffs' unique script. Accordingly, plaintiffs are likely to prove that defendants are diluting the Porsche marks.

## II. IRREPARABLE HARM

■ Infringement of trademark rights cause irreparable harm, even absent a showing of business loss. *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 16 (7th Cir.1992). The Seventh Circuit has found that damages caused by trademark infringement and dilution are by their very nature irreparable and are not susceptible to a remedy at law. *International Kennel Club v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir.1988).

■ Defendants, in contrast, provided the magistrate with insignificant evidence of irreparable harm. The magistrate noted Manny's has developed supplier relationships that might be harmed if defendants are required to change their name. However, it is difficult to discern how defendants' will be injured by changing their name to "Manny's" or "Manny's Repair Shop." Defendants are at little risk of losing suppliers as a result of a name change that still uses "Manny's." Accordingly, the balance weighs heavily in plaintiffs' favor.

The magistrate found plaintiffs' ten year delay in bringing this suit suggests plaintiffs will not suffer irreparable harm. However, there is a strong public policy in favor of voluntary settlements. *Vaughan Mfg. Co. v. Brikam Intern., Inc.*, 814 F.2d 346, 351 (7th Cir.1987). Indeed, the delay here is the re-

sult of plaintiffs' attempt to settle this case, a settlement that appears to have been breached by defendants. Porsche should not be punished for pursuing a non-litigious course of action.

### CONCLUSION

Plaintiffs' objections to the magistrate's report and recommendations are sustained. Plaintiffs' motion for a preliminary injunction is granted. Defendants are directed to cease using the name "Porshop" and Porschen's stylized script pending the outcome of this litigation.